IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DWAYNE D. YOUNG,<br><br>   Plaintiff,<br><br>v.<br><br>FREDERICK ABELLO, Warden,<br>CORPORAL MACK, and<br>SECURITY CHIEF HENSON,<br><br>   Defendants. | Civil Action: MJM-22-1256 |

## MEMORANDUM OPINION

On June 1, 2022, self-represented Plaintiff Dwayne D. Young filed a civil rights Complaint, pursuant to 42 U.S.C. § 1983, ECF No. 1, which he subsequently amended, ECF No. 3. Defendants Frederick Abello and Security Chief Henson[1] move to dismiss the complaint, or alternatively, for summary judgment in their favor. ECF No. 16. Young was advised of his opportunity to respond to the dispositive motion and the risks of failing to do so. ECF No. 17. Young has not filed any response to the motion. No hearing is necessary to determine the matters pending. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendants Abello and Henson's motion, construed as a motion for summary judgment, will be granted, and Young's motion to appoint counsel (ECF No. 14) will be denied.[2]

---

[1]    Defendant Corporal Mack has not been identified by counsel for Department of Public Safety and Correctional Services, and as such, service has not been effected upon him. The Complaint against Mack will be dismissed without prejudice for lack of service.

[2]    A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The Court has reviewed Young's filings and finds he has demonstrated the ability to articulate his claims. He does not present any exceptional circumstances in support of his motion. Having found no exceptional circumstances warranting appointment of counsel, Young's motion will be denied.

I.   **Background**

   A. **Young's Allegations**

In the court-directed Amended Complaint, Young alleges that, after his arrest by employees of the Baltimore City Police Department on January 31, 2022, he was taken to Baltimore Central Booking and Intake Center ("BCBIC").[3] ECF No. 3 at 3. On February 4 or February 5, 2022, while detained at BCBIC, Young was in a holding cell when he was "dumped" out of his personal wheelchair and placed in a broken wheelchair. *Id.* Young states that he filed four grievances. *Id*.

Young claims that Corporal Mack began to harass and threaten him because he sought to speak to the Warden. *Id*. Later, toward the end of March 2022, unidentified officers maced Young. *Id*. Young states that the Warden and Chief of Security were notified of his concerns but took no action. *Id*.

Young reports that in March 2022, staff would come to his cell to inquire as to whether he was alive and then simply leave. *Id*. He states that his cell was not properly equipped as a handicap cell because it did not have, among other things, grab bars by the toilet. *Id.*

From August 12 to August 15, 2022, Young reports he suffered from kidney pain. *Id.* at 3. Corporal Mack again harassed Young, calling him a coward while he was in the medical unit and forcing him to leave without receiving treatment, even though medical staff said Young's EKG was "not good." *Id*.

Additionally, on an unspecified date in August 2022, Security Chief Henson came to Young's housing tier. *Id*. Young asked to speak to him and reported his complaints, including

---

[3] Young was previously advised that his claims regarding his arrest and initial detention as well as his claims that he was not provided a speedy trial would not be considered in the context of this case and that he was free to file separate civil cases raising those concerns. *See* ECF Nos. 2 and 8.

allegations that unspecified staff were stealing from him. Henson directed Young to "write to him" before leaving. *Id*.

As relief, Young seeks compensatory and punitive damages. *Id.* at 4.

### B. Defendants' Response

Defendants Abello and Henson filed a motion seeking dismissal of the Complaint or, in the alternative, summary judgment in their favor. ECF No. 16-2. Defendants argue that the Complaint should be dismissed because: (1) Young has not exhausted his administrative remedies; (2) Defendants have Eleventh Amendment immunity; and (3) Young fails to state a claim under the Fourteenth Amendment. *Id.*

Defendants submit the declaration of Kelvin Harris, Director of Standards, Compliance, and Litigation for the Division of Pretrial Detention and Services ("DPDS"), who conducted a search for any grievances filed by Young. ECF No. 16-5, ¶¶ 1, 8. Only one grievance was found, and it was limited to Young's complaints regarding his right to a speedy trial. *Id*. ¶ 8; ECF No. 16-4. There is no record that Young ever filed a Step II grievance appeal, as required by the DPDS four-step administrative grievance process. ECF No. 16-5, ¶¶ 3, 9.

### II.    Standard of Review

Defendants argue that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or that summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56. ECF No. 16-1. Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion to dismiss styled in the alternative as a motion for summary judgment implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), aff'd 684 F.3d 462 (4th Cir.

2012). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendants filed their motion as a motion to dismiss, or in the alternative, for summary judgment, Young was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. Accordingly, the Court will review Young's claims against Defendants under the Rule 56(a) standard and will consider the exhibits filed in support of Defendants' motion.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014)

(per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful, however, that Young is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 Fed. App'x. 143, 152 (4th Cir. 2016) (citing *Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990)). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### III.   Discussion

Defendants are entitled to summary judgment because Young failed to exhaust available administrative remedies prior to filing his Complaint. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003) (finding that "the exhaustion provision" of the PLRA "plainly extends" to suits regarding prison conditions). Exhaustion under § 1997e(a) is mandatory, and therefore a plaintiff must exhaust his available administrative

remedies before a court can hear his claim. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA . . . . ."); *Ross v. Blake*, 578 U.S. 632, 638 (2016) (finding that "a court may not excuse a failure to exhaust"). Consequently, if McKinnon has not properly presented his claim through an available administrative remedy procedure, the claim must be dismissed pursuant to the PLRA. *See Ross*, 578 U.S. at 639.

Administrative exhaustion under § 1997e(a) is not, however, a jurisdictional requirement and does not impose a heightened pleading requirement on the detainee. *Jones*, 549 U.S. at 215–16. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See id.*; *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

6

DPDS has an established four-step administrative grievance process. ECF No. 16-3 (DPDS Directive 180-1). The policy allows detainees to "seek formal administrative decisions or answers to issues or complaints." *Id*. at 1, DPDS Directive 180-1.03. A detainee may file a grievance to "address issues regarding conditions of confinement, actions of staff, services received, other residents and/or incidents occurring within or under the authority and control of [DPDS] . . . ." *Id*. at 2, DPDS Directive 180-01.06.A(1).

The first step of the process requires the detainee complete a grievance form within 15 days of the incident. *Id*. at 2, DPDS Directive 180-1.06.C(2). The facility is then provided 20 working days to investigate and respond to the grievance. *Id*., DPDS Directive 180-1.06.C(3). Where the detainee is dissatisfied with the investigation of his initial grievance, they may appeal by completing a Step II "Motion for Grievance Committee" form. *Id*. at 4, DPDS Directive 180-1.06.G(1). The Step II grievance must be reviewed by the Resident Grievance Procedure Committee ("RGPC") at an informal hearing. *Id*. at 5, Directive 180-1.06.G(3). The RGPC considers the grievance and votes on the grievance and possible solution. *Id*., Directive 180-1.06.G(6). If the RGPC finds the grievance meritless, the detainee is provided a written explanation of the decision. *Id*., Directive 180-1.06.G(7). If the RGPC determines the grievance has merit, that written decision is sent to the Warden, who can "affirm, reverse, or modify the committee's decision." *Id*., Directive 180-1.06.G(8).

If the detainee is dissatisfied with the RGPC decision at Step II, they may appeal the decision by filing a "Motion to Appeal to the Warden" in Step III. *Id*., Directive 180-1.06.H(1). The Warden "shall review the grievance, records and the [RGPC] decision, and conduct further inquiries if deemed appropriate." *Id*., Directive 180-1.06.H(3). The Warden then issues a written decision regarding the Step III appeal. *Id*.

Finally, if dissatisfied with the Warden's decision in Step III, a detainee may appeal the decision by filing a "Motion to Appeal to the Commissioner" by completing a Step IV form and submitting it to the RGPC. *Id*. at 6, Directive 180-1.06.I(1). The Assistant Commissioner must schedule a hearing. *Id*., Directive 180-1.06.I(2)). At the conclusion of the hearing, the Assistant Commissioner must issue a written decision, which is final. *Id*., Directive 180-1.06.I(3).

Here, the record evidence demonstrates that Young filed only one Step I grievance. That grievance concerned his belief that his criminal trial had been impermissibly delayed. It did not raise any of the issues asserted in this Complaint regarding his confinement at BCBIC. The record evidence further demonstrates that Young never filed a Step II appeal regarding any complaint. Therefore, as Young failed to exhaust the administrative remedies concerning the claims raised in this Complaint, Defendants are entitled to summary judgment in their favor. The Court need not consider Defendants' additional defenses.

### IV.    Conclusion

For the foregoing reasons, Defendants Abello and Henson's motion, ECF No. 16—construed as a motion for summary judgment—will be granted and judgment will be entered in Defendants Abello and Henson's favor. Additionally, the Complaint is dismissed without prejudice as to Defendant Mack. Young's Motion to Appoint Counsel, ECF No. 14, is denied.

A separate Order follows.

DATED: 2/27/24                                           /S/
                                                    Matthew J. Maddox
                                                    United States District Judge